FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 10, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JUSTIN P.,[1] | No.    2:23-cv-00211-EFS |
| Plaintiff, | |
| v. | **ORDER AFFIRMING THE ALJ'S DENIAL OF BENEFITS** |
| MARTIN O'MALLEY, Commissioner of Social Security,[2] | |
| Defendant. | |

Due to lumbar degenerative disc disease, anxiety, depression, scoliosis, arthritis, and stage III kidney disease, Plaintiff Justin P. claims he is unable to work fulltime and applied for supplemental security income benefits. He appeals

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), he is hereby substituted for Kilolo Kijakazi as the defendant.

1
2
3
4
5
6

the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ's formulated RFC as to his mental impairments and ability to interact with others is vague and fails to adequately articulate the limitations imposed. Although the record reflects that Plaintiff's impairments limit him mentally, the RFC is adequately explained and supported by substantial evidence. For the reasons that follow, the ALJ's decision is affirmed.

7

## I.    Background

8
9
10
11
12

In February 2020 Plaintiff filed an application for benefits under Title 2, and in March 2020, Plaintiff filed an application for benefits under Title 16, claiming disability beginning January 1, 2005, based on the physical and mental impairments noted above.[3] Plaintiff later amended his alleged onset date to February 13, 2020, thereby withdrawing the Title 2 portion of his claim.[4]

13
14
15

After the agency denied Plaintiff benefits, ALJ Stallings held a telephone hearing in June 2022 at which Plaintiff appeared with his representative.[5] Plaintiff and a vocational expert testified.[6]

16
17
18
19
20
21
22
23

---

[3] AR 526, 528, 588.

[4] AR 16.

[5] AR 38-69.

[6] Id.

1    After the hearing, the ALJ issued a decision denying benefits.[7] The ALJ

2  found Plaintiff's alleged symptoms were not entirely consistent with the medical

3  evidence and the other evidence.[8] As to medical opinions: the ALJ found:

- The opinions of state agency evaluators Desmond Tuason, MD, and
  Tom Dees, MD, to be generally persuasive as to the limitations
  imposed with the exception of their opined limitations regarding
  exposure to respiratory irritants.

- The opinions of state agency evaluators Desmond Tuason, MD, and
  Tom Dees, MD, that Plaintiff should avoid concentrated exposure to
  fumes, odors, dusts, gases, and poor ventilation to be unpersuasive.

- The opinions of state agency evaluators Lisa Hacker, MD, and Sherri
  Tomak, PsyD, that Plaintiff has a moderate restriction in the ability
  to interact with others; concentrate, persist or maintain pace;  adapt
  or manage oneself; respond appropriately to changes, and not have
  fast-paced work or strict-production quotas to be generally persuasive.

- The opinions of state agency evaluators Lisa Hacker, MD, and Sherri
  Tomak, PsyD, that Plaintiff has a moderate in the ability to
  understand, remember and apply information; carry out simple,

---

[7] AR 13-37.  Per 20 C.F.R. §§ 416.920(a)–(g), a five-step evaluation determines
whether a claimant is disabled.

[8] AR 24-30.

repetitive work tasks, as well as learned complex work tasks; and can

have occasional contact with the general public to be unpersuasive.

- The opinions of consultative examiner Claire Pastor, MD, to be

  unpersuasive.

- The statement of consultative examiner Claire Pastor, MD, that

  Plaintiff cannot work to be inherently neither valuable nor

  persuasive.

- The opinions of consultative examiner Kayleen Islam-Zwart, PhD, to

  be unpersuasive.[9]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity

  since February 13, 2020, the application date.

- Step two: Plaintiff had the following medically determinable severe

  impairments: stage II kidney disease, lumbar degenerative disc

  disease, chronic back pain impairment, depression disorder, and

  anxiety disorder.  The ALJ also found that Plaintiff's asthma,

  gastroesophageal reflux disease, hypogonadism, and low testosterone

  were non-severe.

---

[9] AR 27-29.

DISPOSITIVE ORDER – 4

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

  RFC:  Plaintiff had the RFC to perform a full range of light work with the following exceptions:

  he would need a sit/stand option (defined as change from standing position to sitting position and vice versa approximately every 30 minute for five minutes or sit or stand at will).  He can never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, balance, and stoop; and rarely (defined as no more than 15 percent of an eight-hour workday) crouch, kneel, or crawl.  He would need to avoid all but occasional exposure to excessive vibration and all moving or dangerous machinery and unprotected heights.  He is limited to low stress work (defined as no production pace or conveyor belt work or non-worker-controlled status work with a predicable work environment).  He is limited to work that requires no more than brief and superficial interaction with the public, coworkers, and supervisors, although interaction with supervisors could increase when necessary for training purposes.

- Step four: Past relevant work did not need to be addressed.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a garment sorter (DOT 222.687-014), marker (DOT 209.587-034), and housekeeper cleaner (DOT 323.687-014).[10]

---

[10] AR 19-31.

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[11]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[12] and such error impacted the nondisability determination.[13] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]

---

[11] AR 521.

[12] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[13] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[14] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1

### III.    Analysis

2      Plaintiff seeks relief from the denial of disability on one ground.

3  Plaintiff argues that the language contained in the ALJ's formulated RFC fails to

4  properly define the limitation imposed as to Plaintiff's ability to interact with

5  supervisors, co-workers, and the public.  Specifically, Plaintiff argues that the

6  terms "brief and superficial" are not defined in the Dictionary of Occupational

7  Titles (DOT) or Selected Characteristics of Occupations (SCO) and that the ALJ

8  failed to articulate his reasoning that Plaintiff could have increased interaction

9  with supervisors when necessary for training purposes.

10      The Commissioner argues there was no error because there is applicable

11  law in the circuit acknowledging the terms brief and superficial as they relate to an

12  RFC limitation and the ALJ's finding that Plaintiff could sustain increased contact

13  with supervisors is supported by the medical opinions which the ALJ found

14  persuasive and Plaintiff has not objected to the persuasiveness assigned to those

15  opinions. Additionally, the Commissioner appears to assert that Plaintiff's

16  interactions with supervisors would be limited because all the positions cited by

17  the vocational expert (VE) have a specific vocational preparation (SVP) rating of 2.

18  The Court agrees with the Commissioner. As is explained below, the ALJ's analysis

19  contained no consequential error.

20  **A.    RFC: Plaintiff fails to establish consequential error.**

21      Plaintiff offered two reasons why the formulated RFC was deficient—each

22  reason is addressed below.

23

1

2      1.   Standard

3      "[T]he ALJ is responsible for translating and incorporating clinical findings

4  into a succinct RFC."[15] A mere diagnosis of an impairment, however, does not

5  establish functional deficits.[16]   An ALJ must include properly supported functional

6  limitations in the RFC hypothetical posed to the vocational expert to ensure the

7  identified occupations are consistent with claimant's functional limitations.[17]

8  Therefore, if an ALJ does not articulate specific, clear, and convincing reasons to

9  reject a claimant's symptoms, the corresponding limitations must be included in

10 the RFC.

11     The regulation regarding an RFC determination provides:

12     We will assess your residual functional capacity based on all of the
       relevant medical and other evidence. In general, you are responsible
13     for providing the evidence we will use to make a finding about your
       residual functional capacity. However, before we make a
14     determination that you are not disabled, we are responsible for
       developing your complete medical history, including arranging for a
15     consultative examination(s) if necessary, and making every
       reasonable effort to help you get medical reports from your own
16     medical sources. We will consider any statements about what you can
       still do that have been provided by medical sources, whether or not
17     they are based on formal medical examinations. We will also consider
       descriptions and observations of your limitations from your
18     impairment(s), including limitations that result from your symptoms,

19  _____

20  [15] *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006  (9th Cir. 2015).

21  [16] *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

22  [17] *Robbins. v. Soc. Sec. Admin*, 466 F.3d 880, 886 (9th Cir. 2006); SSR 96-8p:

23  Assessing Residual Functional Capacity in Initial Claims.

such as pain, provided by you, your family, neighbors, friends, or other persons.[18]

Per this regulation, an ALJ is not only permitted to, but is required to, consider information contained in medical records—beyond the medical opinions themselves—when crafting a claimant's RFC. Part of that process includes considering medical-source statements about what a claimant can do.

    2.    Plaintiff's Testimony

    Plaintiff testified that he last worked in 2015.[19]  He said that he completed high school  and one semester of college and had no vocational training or military service.[20]  He said that his only income is $190 a month from DSHS and that he did not need rental assistance because he lived with his father.[21]  He said that he did not receive mental health treatment since 2011.[22]  He said that he was looking for counseling and had an initial appointment that morning with a counseling

———————————

[18] 20 C.F.R. § 416.945(a)(3) (internal citations omitted). *See also* SSR 16-3p ("We consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record.").

[19] AR 43.

[20] AR 43-44.

[21] AR 44.

[22] *Id.*

center.[23] Plaintiff said he had been to his doctor a week before for a rash and had

seen him every month to check his back and to get X-rays.[24]

Plaintiff said he has asthma and has flare-ups when he has anxiety or panic

attacks.[25] He said the main reason he does not work is because his brain will freeze

and he cannot focus and that combined with his back this is too much.[26] He said

that he is forgetful and that he saw a mental health counselor for three months

until she stopped taking his insurance.[27] He said he became depressed after his

mother's accident and recently started looking for counseling and had just found

Frontier.[28] He said the week prior he went for an intake and that he had his first

appointment that morning for orientation and testing.[29]He said that he stays in his

room because he feels safe and that he otherwise gets anxiety.[30] He will try to get

in and out of stores quickly so he will not have a panic attack.[31]  When he as a

---

[23] AR 44-45.

[24] AR 45-46.

[25] AR 46.

[26] AR 46-47.

[27] AR 47.

[28] AR 47-48.

[29] AR 48.

[30] AR 49.

[31] *Id.*

panic attack, he feels like he is having a heart attack and he can get them for any reason when he leaves his room.[32]

He said he cannot do housework for long because he cannot bend and his father does most of the work.[33] He will only drive short distances due to anxiety.[34] He said he can only sleep for about three to four hours a night because his mind races.[35] His pain medication helps but he has not been able to have insurance cover testosterone.[36] He is fatigued and at times will take half an Ambien to be able to sleep.[37] His lower back hurts and feels like a vice is squeezing his back and tingling and numbness radiates into his legs.[38] He can bend and uses a belt to squat and stoop but when his back goes out he is bedridden for the day.[39]  That happens every two and a half weeks.[40] When his back goes out he cannot walk and cannot even sit

---

[32] AR 49-50.

[33] AR 50.

[34] *Id.*

[35] AR 51.

[36] *Id.*

[37] AR 52.

[38] AR 53.

[39] *Id.*

[40] AR 54.

on the toilet.[41] At times he cannot even lift 5 pounds and he cannot sit for more than 15 minutes without changing position.[42] His back goes out if he turns wrong.[43] He has numbness in the morning going down into his calf and feet.[44] He has had that for 20 years but it has gotten worse with weight gain and depression.[45] His anxiety and depression have gotten much worse in the last two years.[46]

Plaintiff said that he has had shots in his back three times, but they never helped.[47] He said he takes his medication but he still has symptoms.[48]

He said that he is 5'7" and weighs 178.[49] He said that his back issues and his panic attacks are his biggest problem.[50]

---

[41] *Id.*

[42] AR 55.

[43] AR 55.

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] AR 56.

[48] *Id.*

[49] AR 57.

[50] *Id.*

DISPOSITIVE ORDER - 12

1

2

3.     The ALJ's Findings

3

At step two, the ALJ considered the four functional domains as to mental

impairments.[51] The ALJ found that Plaintiff has a mild limitation in the domain of

4

understanding, remembering, or applying information.[52] The ALJ found that

5

Plaintiff has a moderate limitation in interacting with others; concentrating,

6

persisting, and maintaining pace; and adapting or managing oneself.[53]

7

In finding a moderate limitation in the domain of interacting with others,

8

the ALJ articulated the following reasoning:

9

> [Plaintiff] reports that he does not like being around too many people
> or crowds and does not like to talk to too many people (C10E). However,
> [Plaintiff] also reports that he regularly socializes by text and in person,
> has no problems getting along with family, friends, or neighbors, gets
> along very well with authority figures, and has never lost a job because
> of difficulty getting along with others (hearing testimony; C10E). At
> the psychological consultative examination, the mental status exam
> showed an appropriate affect, adequate vocabulary, an ability to
> respond to interview questions, and talkative behavior (C7F/9).
> Further, at a psychological evaluation in November 2021, the mental
> status exam showed cooperative and pleasant attitude, good eye
> contact, appropriate affect with a good range, an "okay" mood, no
> immaturity or childishness, and normal speech (C6F/3). Also, mental
> status exams in the treatment records generally showed an appropriate
> mood (C10F/11, 86).[54]

10

11

12

13

14

15

16

17

18

---

19

[51] AR 21-23.

20

[52] AR 22.

21

[53] AR 22-23.

22

[54] AR 22.

23

1    The ALJ articulated his consideration of Plaintiff's nonexertional limitations

2  as to their consistency with the most recent psychological evaluation performed in

3  November 2021 and the record as a whole.[55] The ALJ stated:

> At a psychological consultative examination on November 11, 2020, the mental status exam showed appropriate dress, good hygiene, cooperative and pleasant attitude, good eye contact, appropriate affect with a good range, an "okay" mood, no immaturity or childishness, normal speech, and no looseness of associations, confusion, or tangential or circumstantial thinking (C6F/3). Intellectual functioning testing showed some difficulty with concentration, but also normal memory, normal fund of knowledge, an ability to do basic calculations, intact abstract thinking, and normal insight and judgment (C6F/3-4). Moreover, the examiner concluded that [Plaintiff] is able to manage funds in his own interest, and would not have difficulty performing simple and repetitive or detailed and complex tasks, accepting instructions from supervisors, interacting with coworkers and the public, or performing work activities on a consistent basic without special supervision (C6F/4-5). Nonetheless, [Plainitff's] and depression are accounted for in the limitation to low stress work involving limited social interaction, as found in the residual functional capacity. However, greater mental limitations are not warranted by the generally mild mental status exam findings and routine and conservative mental health treatment in the record (C6F; C7F; C10F/11, 86).[56]

He then went on to state further:

> The residual functional capacity is also consistent with the claimant's activities of daily living. For instance, the claimant told care providers in December 2020 that he is able to do his activities of daily living, including child care and home activities (C9F/61). Further, the claimant told care providers on multiple occasions in 2020 through 2022 that he is able to do all of his activities of daily living without assistance, including driving and household chores (C9F/80; C10F/27). The claimant also told the psychological consultative examiner that he cook and cleans some days, socializes with her girlfriend and her family,

---

[55] AR 26-27.

[56] AR 27.

and helps her work on her camper (C6F/2-3).  The claimant also reports
that he does goes shopping in stores and by computer, can count change,
socializes regularly in person and by text, and has no problems getting
along with family, friends, or neighbors (C10E).  These activities
require an ability to stand and walk for short stretches, lift and carry
light items, complete tasks at an unhurried pace, and handle some
limited social interaction.  Thus, a limitation to low stress work at the
light exertional level and a sit/stand option with additional postural,
workplace environmental, and social interaction limitations adequately
accounts for the claimant's reported range of physical and mental
limitations.[57]

The ALJ then articulated that he found the opinions and finding of

Lisa Hacker, MD, and Sherri Tomak, PsyD, to be generally persuasive that

Plaintiff had a moderate limitation in the ability to interact with others;

concentrate persist or maintain pace; and adapt or manage oneself; was able

to respond appropriately to changes; and could have no fast-paced or strict

production quota work.[58]  He stated:

The undersigned finds these prior administrative medical findings
generally persuasive because they are well-supported by the referenced
objective medical evidence (C5A/9, 14-18; C8A/11, 18-22; C9A/11, 18-
22).  They are also consistent with the record as a whole, including the
generally mild mental status exam findings and routine and
conservative mental health treatment in the record (C6F; C7F;
C10F/11, 86).  However, the undersigned finds that the foregoing
evidence supports an additional limitation to work with a predictable
work environment and no more than brief and superficial interaction
with the public, coworkers, and supervisors, as stated in the residual
functional capacity.[59]

---

[57] *Id.*

[58] AR 28.

[59] *Id.*

The ALJ considered the other opinions of Dr. Hacker and Dr. Tomak that Plaintiff had a moderate limitation in the ability to understand, remember, or apply information; understand, remember, or carry out routine tasks or learned complex tasks; and could have occasional contact with the general public and found them unpersuasive.[60]  He articulated:

> The undersigned finds these prior administrative medical findings unpersuasive because they are not well-supported by the referenced objective medical evidence, which does not suggest significant limitation in the ability to understand, remember or apply information; or the need for a limitation to only occasional interaction with the general public, as long as the interactions are brief and superficial, as stated in the residual functional capacity (C5A/9, 14-18; C8A/11, 18-22; C9A/11,18-22).[61]

4.   <u>Analysis</u>

Plaintiff's sole argument is that the language in the ALJ's formulated RFC that he is limited to "brief and superficial" contact is deficient and that the RFC's provision that interaction with supervisors may increase is vague.  Initially, the Court notes that the present appeal is the first time that Plaintiff has raised this issue.  At no time during the hearing before the ALJ, did Plaintiff's counsel raise issue with the fact that the hypothetical given to the VE, which was identical to the RFC, was deficient.[62]  In her brief to the Appeals Council, Plaintiff's attorney was

---

[60] AR 28-29.

[61] *Id*.

[62] AR 38-69.

equally silent as to the issue.[63]  It is questionable whether Plaintiff has the ability to raise the issue at this time.[64]  The Court will, nonetheless, go on to consider Plaintiff's assertions.

Yet, the Court also highlights that Plaintiff's argument fails to consider the medical opinions on which the ALJ based his reasoning and Plaintiff has not objected to the persuasiveness assigned them. Plaintiff also did not object to the ALJ's consideration of Plaintiff's subjective complaints and did not assert that the ALJ failed to incorporate any additional limitation. As is explained below, the RFC properly accounts for the functional limitations supported by the record.[65]

> a.    _Whether the ALJ's use of the words "brief" and "superficial" was consequential error._

Plaintiff's assertion that the ALJ's use of the words "brief" and "superficial" was consequential error because those words were not contained in the DOT or SOC is meritless.   The Court finds no consequential error in the ALJ's use of those words.

Plaintiff fails to cite any authority which would support his contention that every word contained in the RFC must be contained in the DOT or SCO.  That is

---

[63] AR 666-670.

[64] _Shaibi v Berryhill_, 883 F.3d 1102 (9th Cir. 2017).

[65] _See Magallanes v. Bowen_, 881 F.2d 747, 756-57 (9th Cir. 1989) (allowing ALJ to restrict hypothetical to those limitations supported by substantial evidence).

1   not consistent with historic practice and would be impractical.  For instance, there

2   is no provision in the DOT regarding exposure to environmental limitations such

3   as a dust, fumes, and gases and that is also a frequent limitation imposed in

4   formulated RFCs.

5        The use of the word "superficial" has been considered by the Ninth Circuit

6   Court of Appeals which did not deem the word to be vague or deficient in any

7   manner.  Specifically, the Ninth Circuit held that an ALJ did not err in providing

8   that a plaintiff, who medical sources opined was moderately limited in his ability to

9   interact with others and who was able to "relate to others on a superficial work

10  basis," was capable of "occasional" interaction with coworkers.[66]

11       In his brief, Plaintiff cites to *Kellina M. v. Commissioner, Social Security*

12  *Administration*, No. 3:22-cv-1997-YY, 2023 WL 6239638 (D. Or. Sept. 26, 2023), in

13  support of his assertion.[67]  This is misplaced, however, because the ruling in that

14  case involved a question of whether the ALJ had improperly equated a quantitative

15  limitation of "occasional" with a qualitative limitation of "superficial."  In the

16  present matter, there is no such inference.  Indeed, the ALJ articulated that he did

17  not believe that the opined limitation to occasional contact with the general public

18  was necessary as long as the contact was "brief" and "superficial."[68]  Further, while

19

20  [66] *Shaibi*, 883 F.3d at 1106-1107.

21  [67] ECF No. 11.

22  [68] AR 28.

23

*Kellina* cites to a number of cases which attempt to distinguish whether the word "superficial" in an RFC is synonymous with the word "occasional," none of those cases cited found the word "superficial" to be inherently deficient, as Plaintiff asserts it to be. Indeed, there is no case on record which supports Plaintiff's assertion.

        b.    <u>Whether the provision in the RFC that Plaintiff's interactions with supervisors may increase as needed for training is consequential error</u>

The Court concludes on the record before it, the ALJ did not err in failing to articulate his logic in allowing Plaintiff to have additional contact with supervisors during training. The ALJ articulated his reasoning that he was limiting Plaintiff to brief and superficial interactions overall as a means to accommodate the opined limitation that Plaintiff have no more than occasional interaction with the general public.[69] Such reasoning is consistent with the Ninth Circuit's ruling in *Shaibi*,[70] in which it held that a limitation to brief superficial contact was consistent with a limitation to occasional interaction. The ALJ's reasoning is also consistent with the medical opinions and is supported by the record.

Moreover, the Court finds that even if error had occurred, it would be harmless in this instance. The ALJ articulated that he was limiting Plaintiff's

---

[69] AR 28-29.

[70] 883 F.3d 1102 (9th Cir. 2017).

interactions with coworkers, supervisors, and the public because he was imposing an additional limitation to those imposed by Dr. Hacker and Dr. Tomak, whose opinions he found persuasive.[71]  Drs. Hacker and Tomak opined that Plaintiff was moderately limited in interacting with others and limited contact to occasional contact only as to the general public.  It was the opinion of both sources that Plaintiff would be moderately limited in the ability to interact with the general public but would not be significantly limited in the ability to accept instructions and respond appropriately to supervisors.[72]  Additionally, both sources limited Plaintiff's contact only with the general public.[73] Their opinions were consistent with  the opinion of consultative examiner Claire Pastor, MD, that Plaintiff would not have difficulty accepting instructions from supervisors and interacting with coworkers or the public.[74]

Moreover, it was the testimony of Plaintiff that he did not have problems getting along with others but did not like to be in crowds.[75]  This was also supported by the statement of Plaintiff's father that Plaintiff did not have problems getting along with others, and that he "just doesn't like to be around a lot of

[71] AR 28.

[72] AR 349-350, 401-402.

[73] *Id*.

[74] AR 959.

[75] AR 618-619.

people."[76]  In short, the record is clear that neither the medical opinions nor the testimony of Plaintiff and his father establish that Plaintiff would have difficulty in accepting instruction and criticism from supervisors but mainly has difficulty being in crowds.

The Court also notes that the training periods anticipated for the jobs identified by the VE are brief and not expected to last more than four weeks.  The two jobs identified by the VE were jobs which held a specific vocational preparation level (SVP) of 2.  According to the DOT, a job with an SVP of 2 is one which requires more than a short demonstration but can be learned in up to one month.[77] There is nothing about the jobs identified which would indicate that they would require more than brief and superficial interaction with the public, nor has Plaintiff presented any argument or shown evidence that increased interactions with supervisors would be necessary outside of the short training period.

Based on the record, the Court cannot find consequential error.

5.    Summary

It is the ALJ's responsibility to review and evaluate the conflicting evidence and medical opinions.[78] Here, the ALJ did so and Plaintiff has not disputed the

---

[76] AR 602.

[77] U.S. Department of Labor, Dictionary of Occupational Titles, Fourth Edition, www.dol.gov (last viewed April 5, 2024).

[78] *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999).

DISPOSITIVE ORDER - 21

1  ALJ's consideration of the medical opinions or his own subjective complaints.

2  Plaintiff has argued only that the wording used by the ALJ in the RFC is

3  inherently deficient and that he has not adequately explained his reasoning.  The

4  Court finds that the language used by the ALJ is not deficient and that the ALJ

5  adequately explained his reasoning for formulating the RFC as he did, and these

6  reasons are supported by substantial evidence.

### IV.    Conclusion

8  Accordingly, **IT IS HEREBY ORDERED**:

9  1.    The ALJ's nondisability decision is **AFFIRMED**.

10  2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 11 and

11      15**, enter **JUDGMENT** in favor of the **Commissioner**, and **CLOSE**

12      the case.

13  IT IS SO ORDERED. The Clerk's Office is directed to file this order and

14  provide copies to all counsel.

15  DATED this 10th day of April, 2024.

_____
EDWARD F. SHEA
Senior United States District Judge